UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MOUSTAPHA MAGASSOUBA,

                                    Plaintiff,

                    -v-

CASCIONE, PURCIGLIOTTI &
GALLUZZI, P.C., et al.,

                                    Defendants.

---

20 Civ. 10996 (PAE) (BCM)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Moustapha Magassouba ("Magassouba"), proceeding *pro se*, alleges that his

former counsel, the firm of Cascione, Purcigliotti & Galluzzi, P.C. (the "Firm" or "Cascione")

and each of the Firm's attorneys (together, "defendants"), committed legal malpractice and

violated his constitutional rights in their representation of him in a 2003 state court action in New

York Supreme Court.  Magassouba alleges that defendants failed to timely file his action, failed

to file his case in federal court, misled him about the reasons why certain claims had been

dismissed, withheld documents until after his time to appeal expired, and misled him to accept a

settlement with certain defendants.  Magassouba brought essentially the same claims in a 2018

state court action against defendants.  Defendants moved to dismiss the complaint for failure to

state a claim and on the grounds that all of Magassouba's claims are barred by the applicable

statute of limitations and by *res judicata.*

On June 14, 2021, the Honorable Barbara Moses filed a Report and Recommendation

recommending that the Court grant defendants' motion and deny Magassouba leave to further

amend.  *See* Dkt. 24 (the "Report").  For the following reasons, the Court adopts the Report in

full, with a minor modification to the statement of facts.

I.    **Background**

  A.    **Factual Background**[1]

    1.    **Magassouba's Arrest and Criminal Charges**

On August 1, 2000, Magassouba was arrested, pursuant to a warrant, at his home in

Bronx County, New York, by New York City Police Department ("NYPD") the United States

Postal Service, and the Financial Crimes Task Force of Southwestern Pennsylvania (the "Task

Force"). Am. Compl. at 5; *see also* Dkt. 15 ("Def. Mot."), Exs. 1, 3, 10 ("2003 Order"). In

support of the arrest warrant, Detective Todd Moses, a Task Force Member, submitted an

affidavit. *See* 2003 Order at 2–3. On November 3, 2000, Magassouba was extradited to

Allegheny County, Pennsylvania. *Id.* On November 28, 2000, immigration officials lodged an

immigration detainer against Magassouba, who is a citizen of Guinea, West Africa. *Id.*; Am.

Compl. at 2.

Magassouba was charged with "corrupt organizations," "conspiracy," "unlawful use of

computer," "forgery," and "theft by deception," but, on July 17, 2002, the charges were

dismissed. Def. Mot. Ex. 4 ¶ 16; *see also* Pl. Opp'n, Ex. 1. Magassouba alleges, however, that

---

[1] As Magassouba objects to various aspects of the Report's statement of facts, the Court sets out
the relevant facts here. This factual account draws primarily from the Amended Complaint, Dkt.
2 ("Am. Compl."), and attached or referenced exhibits cognizable on this motion. *See DiFolco
v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to
dismiss . . . a district court may consider the facts alleged in the complaint, documents attached
to the complaint as exhibits, and documents incorporated by reference in the complaint."). The
Court also takes judicial notice of the pleadings in Magassouba's prior state court actions, and
certain orders in those actions. *See Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321
(S.D.N.Y. 2015) (the court may take judicial notice of complaints and other documents filed in
other courts "not for the truth of the matters asserted in the other litigation, but rather to establish
the fact of such litigation and related filings" (quoting *Kramer v. Time Warner Inc.*, 937 F.2d
767, 774 (2d Cir. 1991))).

For the purpose of resolving the motion to dismiss, the Court presumes all well-pled facts to be
true and draws all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l
PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

he was not ordered released from immigration custody until July 31, 2002 and not actually released until August 1, 2002. *See* Am. Compl. at 5; *see also* Def. Mot., Ex. 3 at 1 (notice of claim for 2003 State Court Action); *id.*, Ex. 4 ("2003 State Ct. Compl.") ¶¶ 17–18.

## 2.     The 2003 State Court Action

On or about August 7, 2002, Magassouba contacted defendants about filing suit against the parties involved in his August 2000 arrest. Am. Compl. at 5. The Firm agreed to represent him. *Id.* On August 15, 2002, Magassouba served a Notice of Claim on the Comptroller of the City of New York, advising that he intended to commence an action and would seek damages of $10 million. *See* Def. Mot., Ex. 3, at 1–2.

On July 30, 2003, the Firm filed the 2003 State Court Action in New York Supreme Court, Bronx County against the City, the NYPD, Allegheny County District Attorney Stephen A. Zappala, Jr., and Detective Moses. *See Magassouba v. City of New York, et al.*, Index No. 21963-03 (N.Y. Sup. Ct. Bronx Cty.). Magassouba alleged that, on August 1, 2000, the state defendants "negligently, wrongfully, willfully, maliciously, and with gross negligence physically detained, falsely arrested and forcefully took plaintiff from his home," 2003 State Ct. Compl. ¶ 12, and between August 1, 2000 until August 1, 2002—the date of his release from immigration detention—falsely imprisoned him, *see id.* ¶ 17. He brought claims under 42 U.S.C. §§ 1983 and 1985 and a state law claim for false arrest and wrongful imprisonment. *Id.* ¶¶ 19–28.

On August 12, 2003, in an unrelated criminal indictment, Magassouba was charged with conspiracy to distribute heroin. *See* Def. Mot., Ex. 5. Magassouba remained in custody through trial, which concluded on November 6, 2009, with a guilty verdict. *Id.* at 4. Magassouba was sentenced to time served and released subject to any immigration detainer. *United States v. Magassouba*, No. 03 Cr. 985 (RPP), Dkt. 107 (Nov. 25, 2009).

3

On March 30, 2005, Justice Gonzalez dismissed all of Magassouba's claims against D.A. Zappala in the 2003 State Court Action. *See* Def. Mot., Ex. 6, at 2; Pl. Opp., Ex. 5.  Magassouba objects that the Report's description of the dismissal of these claims misconstrues the state court's language.  Dkt. 29 ("Objections") at 6.  However, the Report's description is accurate. The state court concluded that the complaint failed to plead facts to support personal jurisdiction over Zappala in New York, but pled sufficient facts to support personal jurisdiction over Detective Moses.  Def. Mot., Ex. 6 at 2–3.  The court also dismissed the federal civil rights claim against the other state defendants because "[a] complaint containing only conclusory, vague and general allegations of a conspiracy to deprive a person of constitutional rights cannot withstand a dismissal motion."  *Id.* at 2 (quoting *Ford v. Snashall*, 285 A.D.2d 881, 882 (3d Dep't 2001) (internal quotation marks omitted)).

On August 5, 2008 Magassouba—through the Firm— accepted a $4,200 settlement with the City and the NYPD.  *See* Am. Compl. at 6; Def. Mot., Ex. 9 at 1 n.1; Pl. Opp'n, Ex. 8 ¶ 7.

On December 15, 2008, with Magassouba having accused his lawyers of, *inter alia*, colluding with opposing counsel and misappropriation of funds, the Firm moved to be relieved as his counsel, averring that there was "no longer any level of trust" between attorney and client. Pl. Opp'n, Ex. 8 ¶ 7 (Cascione affidavit in support of motion to withdraw).  On January 12, 2009, Justice Guzman granted the withdrawal motion.  *See* Def. Mot., Ex. 8.  Magassouba objects to this description in the Report, claiming that the withdrawal order was achieved through "exploitation of unlawful acts" and that defendants "lie[d] and sabotage[d]" his 2003 State Court Action.  Objections at 7.  But regardless of the veracity of defendants' claims in support of their motion to withdraw, the record is clear that the state court permitted defendants to withdraw as counsel on January 12, 2009.

On November 27, 2012, the court dismissed the remaining claims in the 2003 State Court Action for failure to prosecute. *See* Def. Mot., Ex. 9.  On April 25, 2013, in response to a motion from Magassouba explaining that his failure to prosecute had been the result of his incarceration between August 11, 2003 and June 1, 2012, Justice Guzman vacated the November 27, 2012 order, and restored the 2003 State Court Action to the calendar. *Id.* at 1–2.

On June 2, 2015, Justice Guzman granted summary judgment in favor of Detective Moses, the only remaining defendant. 2003 Order at 2–3. Justice Guzman concluded that the false arrest and false imprisonment claims were barred by the one-year statute of limitations. *See id.* Justice Guzman also concluded that Magassouba had been released from immigration custody on April 18, 2002, not, as he represented in the 2003 State Court Complaint, on August 1, 2002. *Id.* at 3.  Accordingly, the statute of limitations expired on April 18, 2003—more than three months before Magassouba filed the 2003 State Court Complaint. *Id.* Justice Guzman further held that there had been probable cause to arrest Magassouba, which operates as a complete defense to false arrest and false imprisonment. *Id.* Justice Guzman held that the arrest warrant was "presumed reliable" and that Magassouba had "failed to submit any facts other than speculation that the [underlying] affidavit of Det. Moses was based upon any 'materially impeaching circumstances or grounds for questioning the complainant[']s credibility.'" *Id.* (quoting *Medina v. City of New York*, 102 A.D.3d 101, 104 (1st Dep't 2012)).  Magassouba disputes that *Medina* is applicable to his case.  Objections at 8.  But Magassouba's objections to the state court's conclusions are properly directed to the state court and are not reviewable by this Court. *See Brady v. IGS Realty Co. L.P.*, No. 19 Civ. 10142 (PAE), 2020 WL 5414683, at *5 (S.D.N.Y. Sept. 8, 2020) (under the *Rooker-Feldman* doctrine, among federal courts, only the

Supreme Court may review state court decisions; federal courts may not conduct collateral attacks on state-court judgments.).

### 3. 2018 State Court Action

On April 2, 2018, Magassouba filed the 2018 State Court Action against the Firm, Thomas Gerard Cascione, Michael J. Galluzzi, Kelly Lynne Murtha, and Robert A. Purcigliotti. *See Magassouba v. Cascione, Purcigliotti & Galluzzi, P.C.*, Index No. 100452-18 (N.Y. Sup. Ct. Bronx Cty.); *see also* Def. Mot., Ex. 11 ("2018 State Ct. Compl."). The 2018 State Court Complaint alleged that defendants: (1) missed the deadline to file the 2003 State Court Action, allowing the statute of limitations on certain claims to expire, *see* 2018 State Ct. Compl. ¶¶ 14–16; (2) failed to file the 2003 State Court Complaint in federal court, *see id.* ¶¶17–18; (3) misled or lied to Magassouba to accept a settlement offer from the City and the NYPD, *see id.* ¶¶ 19–21; and (4) breached their attorney-client agreement by withdrawing as counsel, *see id.* ¶¶ 22–25. Magassouba brought claims for violations of his constitutional rights under 42 U.S.C. §§ 1983 and 1985, *id.* ¶¶ 26–29, and for legal malpractice, *id.* ¶¶ 30–33.

On December 14, 2018, Justice Hagler dismissed the 2018 State Court Action. *See* Def. Mot., Ex. 12 ("2018 Order"). Justice Hagler characterized all of Magassouba's claims as sounding in legal malpractice, and found that Magassouba could not succeed on his legal malpractice claim because the underlying case had been dismissed on the ground that there had been probable cause for Magassouba's arrest, which operates as a complete defense to false arrest, false imprisonment, and malicious prosecution. *Id.* at 1. Magassouba's objections to the description of the dismissal in the Report are largely directed at Justice Hagler's findings in the underlying case, *see* Objections at 9, which are not reviewable by this Court.

On April 4, 2019, Justice Hagler denied Magassouba's motion for leave to renew. *See* Pl.

Opp'n, Ex. 13. On December 12, 2019, the Appellate Division affirmed the dismissal,

explaining:

> The action alleging legal malpractice was correctly dismissed because
> [Magassouba] could not show that, but for defendants' negligence, he would have
> prevailed in the [2003 State Court Action] . . . . [Magassouba] could not have
> prevailed in that action because the dismissing court found that there was probable
> cause for his arrest, and probable cause is a complete defense to the claims
> [Magassouba] asserted.

*Magassouba v. Cascione, Purcigliott & Galluzzi P.C.*, 178 A.D.3d 509, 509 (1st Dep't 2019),

*leave to appeal denied sub nom.*, *Magassouba v. Cascione, Purcigliotti & Galluzzi P.C.*, 35

N.Y.3d 918 (2020).

**B.      Procedural History of This Action**

On December 23, 2020, Magassouba filed the Complaint in this Court. Dkt. 1. On

December 29, 2020, he filed the Amended Complaint.[2] Dkt. 2. On January 21, 2021, the case

was assigned to this Court. The same day, the Court referred the case to Judge Moses for pretrial

supervision. Dkt. 7. On January 22, 2021, defendants filed a letter motion seeking leave to file a

pre-answer motion to dismiss. Dkt. 9. On January 25, 2021, the Court referred all dispositive

motions to Judge Moses for a Report and Recommendation. Dkt. 10. The same day, Judge

Moses notified defendants that leave of court was not required to file a motion to dismiss but

directed that any such motion be filed by March 11, 2021. Dkt. 11.

---

[2] The Report states that Magassouba filed the complaint in this action on the same day that the
Court of Appeals denied him leave to denied leave to appeal in the 2018 State Court Action.
Magassouba objects that his motion for leave to appeal had been denied one month earlier, on
November 23, 2020. On this point, Magassouba is correct. *See Magassouba v. Cascione,
Purcigliotti & Galluzzi P.C.*, 35 N.Y.3d 918 (2020) (denying leave to appeal on November 23,
2020).

On February 17, 2021, defendants filed their motion to dismiss. Dkts. 15 ("Def. Mot."), 16 ("Def. Mem."). On February 18, 2021, Judge Moses conducted an initial case management conference and stayed discovery pending resolution of the motion to dismiss. Dkt. 18. On March 9, 2021, Magassouba filed his opposition. Dkt. 20 ("Pl. Opp'n"). On March 11, 2021, defendants filed their reply. Dkt. 21 ("Def. Reply"). On March 17, 2021, Magassouba filed an unauthorized sur-reply, which Judge Moses permitted to remain on the docket due to Magassouba's *pro se* status. Dkt. 23.

On June 14, 2021, Judge Moses filed the Report. Dkt. 24. On June 25, 2021, Magassouba moved for an extension of time to file his objections, Dkt. 25, which the Court granted in light of his *pro se* status, Dkt. 27. On July 9, 2021, Magassouba filed his objections. Dkt. 29 ("Objections"). On July 13, 2021, defendants filed their response to these objections. Dkt. 30 ("Def. Response"). On July 21, 2021, Magassouba moved for leave to response to defendants' response. Dkt. 32 ("Pl. Response"). On July 23, 2021, the Court granted Magassouba's motion, stating that it would consider his arguments presented in the motion for leave to file a response. Dkt. 33.

## II.   Legal Standards

### A.   Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are timely made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "To accept those portions of the report to which no timely objection has been

made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also, e.g., Wilds v. UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report and Recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). "This is so even in the case of a *pro se* petitioner." *Perez v. Mason Tenders Dist. Council Tr. Funds*, No. 17 Civ. 1022 (PAE) (AJP), 2017 WL 5125542, at *2 (S.D.N.Y. Nov. 1, 2017), *aff'd*, 742 F. App'x 584 (2d Cir. 2018). Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (collecting cases).

## B.     Motions to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to

9

legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The Court is "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting it "to raise the strongest arguments that [it] suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks and citation omitted). The Court may not read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted).

## III.   Discussion

The Report recommended dismissing Magassouba's claims because: (1) the legal malpractice and § 1983 claims were barred by the doctrine of *res judicata*; (2) Magassouba failed to state a constitutional claim against defendants; and (3) both claims were time-barred. The Report further recommended denying leave to amend. Magassouba objects to the Report in several respects. These largely restate his arguments before Judge Moses. Accordingly, review for clear error would be appropriate. *See Dickerson*, 2013 WL 3199094, at *1. However, in light of Magassouba's *pro se* status, and in the interest of completeness, the Court reviews the Report *de novo*.

At the outset, Magassouba generally objects that conduct of "the lower court" reflects "partiality to one side to the point that [it] became the factor in the determination of [the] cause of action presented to the State court." Objections at 24 (quotation and citation omitted). To the

extent that this refers to one of Magassouba's state court actions, this Court does not have the

ability to review or modify a state court action. *See Brady*, 2020 WL 5414683, at *5 (stating that

federal courts may not adjudicate collateral attacks on state-court judgments). To the extent that

this refers to Judge Moses, the record is devoid of any evidence of partiality, and Magassouba

does not point to any.

### A.   *Res Judicata*

The Report concluded that Magassouba's claims are barred by *res judicata* because they

arose from the same transaction that formed the basis of his claims in the 2018 State Court

Action. Report at 11. Accordingly, the Report concluded, all of Magassouba's claims could

have been raised in that action, and indeed that most of them were raised. *See id.* at 12.

"Under the doctrine of *res judicata*, or claim preclusion, 'a final judgment on the merits

of an action precludes the parties or their privies from relitigating issues that were or could have

been raised in that action.'" *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quoting *Rivet v.

Regions Bank of La.*, 522 U.S. 470, 476 (1998)) (emphasis omitted); *see also Federated Dep't

Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). "*Res judicata* (claim preclusion) is distinct

from the related doctrine of collateral estoppel (issue preclusion), which 'refers to the preclusive

effect of a judgment that prevents a party from litigating, for a second time, an issue of fact or

law that has once been decided.'" *MFW Assocs., LLC v. Plausteiner*, No. 15 Civ. 2513 (PAE),

2017 WL 2418277, at *8 (S.D.N.Y. June 2, 2017), *aff'd*, 729 F. App'x 51 (2d Cir. 2018)

(summary order) (quoting *Yeiser v. GMAC Mortgage Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y.

2008)). "The defense of *res judicata* . . . may be brought, under appropriate circumstances,

either via a motion to dismiss or a motion for summary judgment." *Sassower v. Abrams*, 833 F.

Supp. 253, 264 n.18 (S.D.N.Y. 1993). The party moving to dismiss on *res judicata* grounds

must show that "(1) the previous action involved an adjudication on the merits; (2) the previous

action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. NYC Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

"A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). And when evaluating a prior action to determine whether claims are barred by *res judicata*, "courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related findings." *Day v. Distinctive Pers., Inc.*, 656 F. Supp. 2d 331, 336 (E.D.N.Y. 2009) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

First, Magassouba objects that the dismissal in the 2018 State Court Action was not a final judgment on the merits. *See* Objections at 25–26. That is incorrect. The 2018 State Court Action was dismissed on the grounds that the claims in the 2003 State Court Action against Detective Moses, even if not time-barred, were required to be dismissed due to "the existence of probable cause [which] is a complete defense to the claims of false arrest and false imprisonment . . . and malicious prosecution." 2018 Order of Dismissal; *see also Magassouba v. Cascione, Purcigliott & Galluzzi P.C.*, 178 A.D.3d at 509 (affirming lower court decision). That is a decision on the merits. *See Berrios v. NYC Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) ("The dismissal for failure to state a claim is a final judgment on the merits and thus has *res judicata* effects[.]" (citation omitted)).

Second, it is undisputed that both cases involve the same parties.

12

Finally, the Court takes judicial notice of the 2018 State Court Complaint, not for the truth of the matter asserted, but to establish the nature of the claims brought in that action. Review of the 2018 State Court Complaint reveals that this action and the 2018 State Court Action clearly arise from the same transaction: defendants' representation of Magassouba in the 2003 State Court Action.  In the 2018 State Court Action, Magassouba alleged that defendants: (1) failed to file the 2003 State Court Complaint and "missed the statute of limitations," resulting in the dismissal of his claims against Detective Moses, 2018 State Ct. Compl. ¶¶ 14–16; (2) failed to file the 2003 State Court Complaint in federal court, *see id.* ¶¶ 17–18; (3) misled plaintiff to accept a settlement with the City and NYPD defendants in the 2003 State Court Action, *see id.* ¶¶ 19–21; and (4) breached their contract with Magassouba by withdrawing as counsel, *see id.* ¶¶ 22–25.   Magassouba's claims in this action are largely identical.  This case involves allegations that defendants misled Magassouba as to the reason for the dismissal of some of his claims in 2005 and withheld documents from him until after the time to appeal expired.  *See* Am. Compl. at 5–6.  Those allegations arise out of the same transaction, namely defendants' representation of Magassouba in the 2003 State Court Action.  *Res judicata* also bars "the parties or their privies from relitigating issues that . . . could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  Accordingly, claims related to this alleged failure by defendants are also barred.

Magassouba objects to the Report's conclusion that the two actions involve the same claims or that his claims that could have been raised in the 2018 State Court Action. Magassouba argues that the state court concluded that he had only one claim (legal malpractice) and here, he brings two claims, a legal malpractice claim and a § 1983 claim.  *See* Objections at 2–3.  He argues that this latter claim is a "new cause of action" and therefore that *res judicata*

does not apply. *Id.* at 25–26; *see also id.* at 13–14. But whether the claims were formulated—or whether the state court construed the claims—as a single claim for malpractice or as pair of claims for malpractice and a constitutional tort is immaterial. "The fact that causes of action may be stated separately, invoke different legal theories, or seek different relief will not permit relitigation of claims[.]" *Pondview Corp. v. Blatt*, 95 A.D.3d 980, 980 (2d Dep't 2014); *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir. 2002) ("Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." (quotation omitted)). In both cases, all of Magassouba's claims arise out of defendants' representation in the 2003 State Court Action, and therefore should have been brought in the 2018 State Court Action.

Finally, Magassouba conclusorily states that he did not have a full and fair opportunity to litigate the original claim in state court. *See* Objections at 25. He does not explain what about the 2018 State Court Action denied him such an opportunity.

Accordingly, the Court adopts the Report's recommendation to dismiss Magassouba's claims as barred by *res judicata*.

## B.    Failure to State a Constitutional Tort Claim

The Report next recommended dismissing Magassouba's § 1983 claim because "there is no constitutional right to the effective assistance of counsel in civil cases." Report at 13 (quoting *Hango v. Royall*, 466 F. App'x 30, 35 (2d Cir. 2012) (summary order)). The Report concluded that Magassouba's attorneys had not been acting "under color of state law." *Id.*

The Report is clearly correct. Section 1983 provides redress for the deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under

14

the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). There is no constitutional right to effective assistance of counsel in civil cases, *see Hango*, 466 F. App'x at 35. Nor were Magassouba's attorneys acting under color of state law, *Shorter v. Rice*, No. 12 Civ. 0111 (JFB), 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position."). Magassouba objects that he "stat[es] that there is a constitutional right to effective assistance of counsel," and that his attorneys therefore acted under the color of state law. Objections at 26; *see also* Pl. Response at 2–3. But merely stating that the right exists and that his attorneys acted under color of state law does not make it so. The Court adopts the Report's recommendation to dismiss Magassouba's constitutional claim for failure to state a claim.[3]

## C.    Statute of Limitations

The Report next concluded that Magassouba's claims were barred by their respective statutes of limitations. The statute of limitations in New York for legal malpractice claims is three years. *See* N.Y. C.P.L.R. 214(6). As the Report notes, the "continuous representation" doctrine tolls the statute of limitations for legal malpractice claims "until the ongoing representation is completed." Report at 14 (quoting *Glamm v. Allen*, 57 N.Y.2d 87, 94 (1982));

---

[3] The Report perceptively recognized that Magassouba's malpractice claim, while vulnerable on *res judicata* and timeliness grounds, could not independently be dismissed for failure to state a claim for malpractice. *See* Report at 13 n.2. Justice Guzman dismissed the 2003 State Court Action against Detective Moses at the summary judgment stage on the basis that the officers had probable cause, a complete defense to false arrest and imprisonment. Defendants therefore argue that Magassouba cannot show that their actions were the but-for cause of his failure on those claims. MTD ¶¶ 17–19. *See Brooks v. Lewin*, 21 A.D.3d 731, 734 (1st Dep't 2005) (to succeed on a legal malpractice claim, the plaintiff must show that "but for the attorney's negligence, she would have prevailed in the underlying matter or would not have sustained any ascertainable damages"). But at the motion to dismiss stage, based on the Amended Complaint and cognizable documents, the Court cannot conclude that the officers had probable cause and therefore that Magassouba's legal malpractice claim must be dismissed on this basis.

*see also Warney v. McMahon Martine & Gallagher*, No. 95 Civ. 7064 (PKL), 1996 WL 339997, at *1 (S.D.N.Y. June 20, 1996) ("[T]he continuous representation doctrine relieves a plaintiff of his obligation to commence an action against his attorney until the attorney has ceased to represent the plaintiff in the case in which the malpractice has occurred."). However, when the "formal attorney-client relationship is severed, the tolling of the statute of limitations ceases." *Warney*, 1996 WL 339997, at *2. Section 1983 does not have a specific statute of limitations, but instead is "subject to the statute of limitations the state courts would apply in an analogous state action." *Meyer v. Frank*, 550 F.2d 726, 728 (2d Cir. 1977). Magassouba has pled this action as a legal malpractice action. Accordingly, his constitutional claim is subject to the same three-year statute of limitations.

Magassouba's attorney-client relationship was severed, at the latest,[4] on January 12, 2009 when Justice Guzman permitted defendants to withdraw from representing Magassouba in the 2003 State Court Action. Defendants' conduct in that action form the basis for this case. After that termination, defendants were no longer representing Magassouba. Accordingly, the statute of limitations on Magassouba's claim expired by January 12, 2012. As the Report notes, it does not matter that the last of the claims in the 2003 State Court Action were resolved in June 2015. Report at 15.

Magassouba reiterates his argument that the statute of limitations has not run because "no time elapsed" between the resolution of the 2018 State Court Action and the commencement of this action. Objections at 27. That argument fails. Even if his pursuit of a state remedy tolled

---

[4] As the Report notes, it is arguable that the statute of limitations began to run even earlier: on January 5, 2009, when defendants' firm sent Magassouba a letter stating that the firm intended to move to withdraw as counsel. Report at 14 n. 8; *see* Pl. Opp'n, Ex. 7.

the statute of limitations, which it does not, *see, e.g.*, *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007), *Stembridge v. NYC Dep't of Educ.*, No. 12 Civ. 7079 (JPO), 2014 WL 2933079, at *3 (S.D.N.Y. June 27, 2014), Magassouba did not commence the 2018 State Court action until long after the statute of limitations had run on both claims.

Magassouba further objects that defendants "committed several fraudulent acts which [have] tolled the statute of limitations." Objections at 27. But Magassouba does not explain what these acts were, when they occurred, or why they would act to toll the statute of limitations, which accrues "when the malpractice is committed, not when the client discovers it," *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009) (summary order) (quoting *Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 7–8 (2007) (internal quotation marks omitted)).

Accordingly, because it is clear from the face of the Amended Complaint that Magassouba's claims are time-barred, the Court adopts the Report's recommendation to dismiss Magassouba's claims as untimely. *See Gonzalez v. City of New York*, No. 18 Civ. 02197 (GHW), 2018 WL 10323053, at *5 (S.D.N.Y. Dec. 18, 2018) ("A district court may consider timeliness on a motion to dismiss when the circumstances are 'sufficiently clear on the face of the complaint and related documents as to make the time-bar ruling appropriate[.]'" (quoting *Arco Cap. Corps. Ltd. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 543 (S.D.N.Y. 2013))).

**D.    Leave to Amend**

Finally, the Report recommends denying Magassouba leave to amend. "[T]he court should not dismiss a *pro se* [complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation and citation omitted). However, denial of leave to amend is appropriate where "amendment would be futile." *Jackson*

*v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020) (summary order) (quotation omitted).

Such is the case here. Because all of Magassouba's claims are barred by *res judicata* and the statute of limitations, to permit Magassouba leave to amend would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."); *Marcelin v. Cortes-Vazquez*, No. 09 Civ. 4303 (RRM), 2011 WL 346682, at *2 (E.D.N.Y. Jan. 28, 2011) (denying *pro se* plaintiff leave to amend where claims were barred by *res judicata*); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 314 F. Supp. 3d 497, 519 (S.D.N.Y. 2018) (denying leave to re-plead where claims were barred by *res judicata*); *Rivera v. City of New York*, No. 16 Civ. 9709 (GHW), 2019 WL 252019, at *9 (S.D.N.Y. Jan. 17, 2019) (denying *pro se* plaintiff leave to amend where claims were barred by statute of limitations). Magassouba objects that he is a *pro se* with limited experience and should be given leave to re-plead. Objections at 29. But the defects in the Amended Complaint cannot be cured by re-pleading, as the Court has concluded that the claims are necessarily barred by *res judicata* and the statute of limitations.

Accordingly, the Court adopts the Report's recommendation to deny Magassouba leave to amend.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in full, with the modification at *supra* note 2, and denies Magassouba leave to file a second amended complaint.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 15 and close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 15, 2021
        New York, New York